UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ENRIQUE ANTONIO VILCHEZ-MANZANARES,

Petitioner,

v.

TODD BLANCHE, et al.,

Respondents.

Case No. 5:26-cv-03857-PD

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

**A# 220-353-823**

Enrique Antonio Vilchez-Manzanares ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking release, or in the alternative a hearing, from Respondents' custody. Dkt. No. 1 ("Petition"). Respondents filed an Answer, and Petitioner filed a Reply and a supplemental brief addressing his claim under the Administrative Procedure Act ("APA"). Dkt. No. 9 ("Answer"); Dkt. No. 10 ("Reply"); Dkt. No. 11 ("Supplement").[1] For the reasons discussed below, the Petition is granted in part.

[1] Petitioner filed the Supplement without leave of Court. The Court has nonetheless considered it.

## I. Background

Petitioner is a citizen of Nicaragua. Petition ¶¶ 1-7. On October 20, 2021, U.S. Border Patrol encountered Petitioner near Sasabe, Arizona, shortly after he entered the United States without inspection, and processed him for expedited removal. *Id.* ¶¶ 8-9; Dkt. No. 1 at 51-53. Petitioner expressed a fear of returning to Nicaragua and was referred to an asylum officer. Petition ¶ 10.

On November 3, 2021, Immigration and Customs Enforcement ("ICE") released Petitioner from custody. The record contains two release documents. The first is an Interim Notice Authorizing Parole under section 212(d)(5)(A) of the Immigration and Nationality Act ("INA"), which states that Petitioner's parole "is valid for one year" and "will automatically terminate . . . at the end of the one-year period unless ICE provides [him] with an extension at its discretion." Dkt. No. 1 at 55. The second is a Form I-286, Notice of Custody Determination dated November 2, 2021. *Id.* at 58. The Form I-286 states that pursuant to the authority codified in Section 236 of the INA, the Department of Homeland Security ("DHS") Deportation Officer had determined that pending final administrative determination in Petitioner's case, Petitioner was to be released under conditions. *Id.* at 58-59.

Petitioner thereafter lived with his partner and three children in the Los Angeles area and alleges that he complied with all conditions of his supervision. Petition ¶¶ 19-20. Respondents do not dispute that allegation.

On June 23, 2025, Petitioner appeared for a credible fear interview at the Los Angeles Asylum Office. *Id.* ¶ 14. The asylum officer found that Petitioner had established a credible fear of persecution or torture and served him with a Notice to Appear placing him in removal proceedings under 8 U.S.C. § 1229a. *Id.* ¶¶ 14-15; Dkt. No. 1 at 61. ICE took Petitioner into

custody at the conclusion of the interview. Petition ¶ 17. Petitioner did not receive advance notice or a hearing before his re-detention. *Id.* ¶¶ 21-23.

On August 15, 2025, an Immigration Judge ("IJ") denied Petitioner's request for a custody redetermination on the ground that Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b). Dkt. No. 1 at 65-66.

On January 14, 2026, the IJ conducted a bond hearing at which, according to Respondents, the Government bore the burden of proof. *Id.* at 68-69; Answer at 2. In a written order, the IJ found that Petitioner "is a flight risk such that no bond is appropriate," citing his "relatively recent illegal entry in 2021," the fact that his family are not tied to the United States "because they are also in removal proceedings," his employment since 2022 without authorization, and the fact that Petitioner's employer "does have substantial income and has provided [Petitioner] with a fixed address." Dkt. No. 1 at 68. The IJ was also "extraordinarily concerned with the viability of [Petitioner]'s claim for asylum and related relief," because in Petitioner's removal proceedings the government had raised a claim that was "a potentially complete bar to relief." Dkt. No. 1 at 68.

Although Petitioner reserved appeal of both custody decisions, *Id.* at 66, 69, nothing in the record indicates that he appealed either decision to the Board of Immigration Appeals ("BIA").

On February 23, 2026, Petitioner's application for asylum was denied and a removal order is issued. Dkt. No. 9 at 14-17. Petitioner appealed that decision to the BIA, and the appeal remains pending. Answer at 2-3; Dkt. No. 9 at 19. The Court takes judicial notice of the records of the Executive Office for Immigration Review, available at https://acis.eoir.justice.gov, which reflect that the BIA received Petitioner's appeal on February 27, 2026, Petitioner's brief was received on June 29, 2026, the briefing schedule has expired, and no DHS brief was received. *See* Fed. R. Evid. 201(b)(2).

Petitioner's removal order therefore is not administratively final. *See* 8 U.S.C. § 1101(a)(47)(B).

## II. Discussion

The Petition raises four claims: (1) Petitioner's re-detention without notice or a pre-deprivation hearing violated his right to procedural due process; (2) the post-deprivation custody hearings he received were constitutionally inadequate; (3) his detention violates substantive due process; and (4) the revocation of his release was arbitrary and capricious under the APA. Petition ¶¶ 95-121.

Respondents do not address Petitioner's argument that his June 23, 2025 re-detention without notice or a pre-deprivation hearing violated due process. Nor do they contend that the August 2025 bond hearing was adequate. Respondents' position is that Petitioner received a legally adequate bond hearing on January 14, 2026, the government shouldered the burden of proof, and the bond denial was not an abuse of discretion.

### A. Procedural Due Process

Petitioner's first argument is that his re-detention without notice or a pre-deprivation hearing violated his right to procedural due process. Courts in this district have repeatedly found claims like this one meritorious. *See Herman v. DHS*, No. 26-cv-01995-MBK, 2026 WL 1723960, at * 4 (C.D Cal. June 12, 2026); *Aperyan v. Semaia*, No. 26-cv-00699-WLH-AYP, 2026 WL 874734, at *4 (C.D. Cal. Mar. 27, 2026); *Meneses v. Santacruz*, 811 F. Supp. 3d 1158 (C.D. Cal. 2025); *M.V.F. v. Santacruz*, No. 25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The protection afforded by the Due Process

Clause runs to citizens and noncitizens alike. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.").

Evaluating of Petitioner's due process rights proceeds in two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

**1. Protected Liberty Interest**

Conditional release from physical restraint may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). Once an individual is granted conditional release, therefore, he may have a protected liberty interest in remaining in the community—and an attendant right to procedural protections before that liberty is revoked. *See id.* (due process requires pre-deprivation hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). In deciding whether a specific form of conditional release gives rise to a protected liberty interest, courts compare the form of conditional release at issue with the parolee's liberty interest as described in *Morrissey*. *See González-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole enables a parolee "to do a wide range of things" available to individuals who have never been convicted of any crime—to live at home, work, be with his friends and

family, and "form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," including monitoring and requiring authorization to work and travel, the parolee's "condition is very different from that of confinement in a prison." *Id.* Moreover, a parolee "relie[s] on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee," and as such, a parolee possesses a protected interest in his continued liberty. *Id.* at 481-84.

Petitioner was released under conditions pending completion of his removal proceedings. His release was an implicit promise that he would be able to stay in the community for the duration of his administrative proceedings so long as he complied with the release conditions. The Court thus easily concludes—as have many courts in this Circuit—that once Petitioner was released on bond, he gained a protected liberty interest in remaining out of custody. *E.g., Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody"); *Wei v. Warden Adelanto ICE Processing Center*, No. 5:26-cv-03064-BFM, 2026 WL 1771047, at * 2 (June 17, 2026) (collecting cases).

**2. Process Owed in Connection with Re-Detention**

As Petitioner has a protected liberty interest in his conditional release, the question is what process he is owed before the government would take that liberty interest away. Petitioner claims that due process required process before he was taken into custody, and thus the appropriate habeas remedy is for him to be released back to the community on the conditions that existed prior to his re-detention.

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming, without deciding, that *Mathews* applies in immigration detention context, and collecting authority applying *Mathews* to immigration detention). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Regarding the first factor, as set forth above, the liberty interest at stake here is significant. Petitioner has a substantial interest in remaining out of custody. He was released by DHS on November 3, 2021, and lived in the community for more than three and a half years before his re-detention on June 23, 2025. Petition ¶¶ 1, 11-12, 19-20. During that time he lived with his partner and three children, worked, maintained a fixed address, and, according to his unrebutted allegations, complied with every condition of his supervision. *Id.* ¶¶ 19-20. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

While Petitioner remained subject to supervision during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. District of Columbia*, 864

F.3d 671, 683 (D.C. Cir. 2017); *Pinchi*, 792 F. Supp. 3d at 1032 (N.D. Cal. 2025) (collecting cases). Accordingly, this factor weighs in Petitioner's favor.

Turning to the second *Mathews* factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide him with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). And where a petitioner did not receive any pre-deprivation custody hearing or other process in connection with the revocation of his release, "the risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

Respondents do not identify any process in place to ensure that individuals in Petitioner's position are not taken into custody improperly. Civil immigration detention is constitutionally permissible only to prevent flight or protect against danger to the community. *See Zadvydas*, 533 U.S. at 690. Those factors determine whether detention is appropriate under § 1226(a), *see Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), and those factors necessarily were found when DHS initially released Petitioner. *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1167 (S.D. Cal. 2025) ("In general, '[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.' "); *Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted) (a petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk"). And once he was released, Petitioner had a liberty interest in remaining at liberty unless he no longer meets those criteria. *Espinoza v. Kaiser*, No. 1:25-cv-01101 JLT SKO, 2025 WL 2581185, at *13 (E.D. Cal. Sept. 5, 2025) (cleaned up). Respondents have

not shown that anyone, let alone a neutral decisionmaker, considered whether there were changed circumstances that warranted Petitioner's re-detention, or that there was any process in place to make such a finding before he was taken into detention.

As to the third *Mathews* factor, Respondents do not articulate any countervailing government interest that supports only providing this process over six months after Petitioner's re-detention. Due process "usually" requires a hearing before the State deprives a person of liberty or property. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. *Id.* at 128. Respondents do not argue that either exception applies here. There is no argument that quick action was necessary here. Petitioner appeared at the Los Angeles Asylum Office for his credible fear interview, he was found to have demonstrated a credible fear of persecution or torture, and then taken into custody. Petition ¶¶ 16, 17. Accordingly, this factor favors Petitioner.

Because each of the *Mathews* factors favors Petitioner's pre-deprivation process claim, the Court finds that Petitioner's detention—which was accompanied by no process—violates the Due Process Clause.

### 3. Custodial Bond Hearings

As noted above, Respondents do not directly address Petitioner's pre-deprivation due process argument. Respondents' position is that Petitioner is not entitled to habeas relief because he received post-deprivation process. Specifically, Petitioner had two custody redetermination hearings before an IJ. Although the first hearing, in August 2025, rested on a determination that Petitioner was subject to mandatory detention, the second, on January 14, 2026, was an individualized bond hearing at which Petitioner was represented by counsel and, according to Respondents, the Government bore

the burden of proof. Petition at 68-69; Answer at 2. Respondents argue that the IJ did not abuse his discretion in denying bond and that Petitioner must exhaust administrative remedies before coming to this Court to challenge the bond denial.[2] But Respondents do not discuss whether or how the due process violation resulting from the absence of pre-detention process was remediated by the bond hearing almost seven months later. *See Saballos Rosales v. Noem*, No. 5:26-cv-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting TRO and finding that post-detention process is no substitute for the pre-detention process petitioner was owed); *Charan S. v. Warden, CA City*, No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months"); *see also Riveros-Sanchez v. City of Easton*, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.").

To the extent Respondents' position is that any due process violation in Petitioner's initial detention was rendered harmless over six months later when the IJ determined that Petitioner was a flight risk, they do not make that argument. Arguments that are not "coherently develop[ed]" are forfeited—a rule that is routinely applied against parties far less sophisticated than Respondents. *See Hernandez v. Garland*, 47 F.4th 908,

[2] Respondents argue that Petitioner should have appealed the adverse decision on his bond hearing; that argument applies only to the result of the bond hearing, not to the procedural due process argument raised in the Petition. Constitutional claims are generally excepted from the exhaustion requirement, because neither IJs nor the BIA are permitted to consider constitutional challenges to the statutes they administer. *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013). Respondents offer no basis not to apply that general rule here.

916 (9th Cir. 2022). Moreover, to the extent such error could be harmless, Respondents have not shown that any constitutional error was harmless on the facts of this case.

## III. Conclusion

For the reasons stated, the Court ORDERS the following:

The Petition is granted as to Count One under procedural due process and the remaining counts are dismissed without prejudice.

Respondents shall release Petitioner Enrique Antonio Vilchez-Manzanares (A# 220-353-823) from immigration custody within 24 hours of this Order under the terms and conditions of Petitioner's existing release, as if Petitioner had not been detained.

Respondents shall return to Petitioner any of Petitioner's personal belongings that were seized from him.

Further, Respondents shall file a status report within three days of this Order (1) confirming Petitioner's release, and (2) confirming the return to Petitioner of his personal belongings.

DATED: October 28, 2026

Patricia Donahue
United States Magistrate Judge